UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL E. NORTON, SR.,

                              Plaintiff,

vs.

                                                    **SECOND AMENDED**
                                                    **COMPLAINT**

                                                       **13-CV-6355**

ERIE COUNTY;
TIMOTHY B. HOWARD, in His Individual and Official
Capacity as Erie County Sheriff;
BRIAN DOYLE, in His Individual and Official Capacity
as Erie County Sheriff's Department Administrative
Chief or Undersheriff;
JOHN DOE, in His Individual and Official Capacity
as First Deputy Superintendent ECHC;
JOHN/JANE DOE(S), SERGEANTS(S), Erie County
Holding Center;
JOHN/JANE DOE(S), LIEUTENANT(S), Erie County
Holding Center;
JOHN/JANE DOE(S), DEPUTY SHERIFF(S), Erie County
Holding Center;
Erie County Deputy Sheriff Gavin;
Erie County Deputy Sheriff Boyce;
Erie County Deputy Sheriff VanderCort;
Erie County Deputy Sheriff Roman;
Erie County Deputy Sheriff Stevens;
Erie County Deputy Sheriff Allman;
Erie County Deputy Sheriff Klein;
JOHN/JANE DOE, Supervisor, Medical Staff, Erie County Holding
Center;
JOHN/JANE DOE(S), Medical Department Staff, Erie County
Holding Center

                              Defendants.
_____

1

## NATURE OF ACTION

1.    This action is in the nature of a civil rights claim for damages arising from Plaintiff's pretrial detention in or about May 2009 through April 2011, at the Erie County Holding Center, 40 Delaware Avenue, Buffalo, New York, Erie County, New York (hereinafter referred to as "E.C.H.C.").

2.    Mr. Norton asserts that during his pretrial detention his constitutional rights to due process under the Fourteenth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution were violated.

3.    Mr. Norton is seeking damages for the Defendant's violation of his civil rights pursuant to 42 USC 1983.

4.    Mr. Norton is further seeking damages for the Defendants' violation of the Americans with Disabilities Act (hereinafter referred to "ADA") and the Rehabilitation Act.

5.    The grounds for Mr. Norton's claims are that he is an individual with a history of heart disease for whom:

a) Acceptable medical treatment was not provided in violation of 42 USC Section 1983 and the United States Constitution;

b) Denial of access to medical care and treatment, prescription medication, or other reasonable accommodations were not provided in violation of the Americans With Disabilities Act and/or the Rehabilitation Act;

c) The municipal Defendants, including the Erie County Sheriff and other "policymakers" engaged in a pattern and practice of discrimination against Mr. Norton in a manner demonstrating a "deliberate indifference" to the medical needs of such inmates with a history of heart disease in violation of 42 USC Section 1983 and the United States Constitution.

d) Supervisory personnel failed to train and/or supervise officers and civilian employees or rectify unconstitutional practices, including failing to implement protocol regarding the handling and treatment of inmates with history of heart disease in violation of their constitutional rights and their rights under 42 USC Section 1983.

e) Despite being aware of NYSDOC directives regarding the treatment of inmates with heart disease, Defendants failed to implement the directives, failed to comply with the requirements of the ADA as it applies to local jails, failed to develop an appropriate protocol for responding to an accommodation request from Plaintiff, and engaged in other conduct all of which resulted in discrimination against Mr. Norton as a qualified individual

with a disability in the administration of medical treatment, services, and protocol of the facility, in violation of his rights under the Americans With Disabilities Act and the Rehabilitation Act.

6.     Jurisdiction is vested in this Court pursuant to 28 USC Section 1331 (Federal question jurisdiction).

7.     At all times material to Mr. Norton's claims under 42 USC Section 1983, all defendants acted pursuant to or under color of state law.

8.     Venue is proper in this judicial district because all parties reside or are found herein and this is the district in which the causes of action arose.

**THE PARTIES**

9.     Plaintiff, Carl E. Norton, Sr. is currently incarcerated at the Livingston Correctional Facility, P.O. Box 91, Sonyea, New York 14556.

10.     Mr. Norton was arrested in May 2009 and was detained at the Erie County Holding Center (hereinafter "E.C.H.C.") while awaiting trial. This facility is operated by the Jail Management Division of the Erie County Sheriff's Department.

11.     While in the custody of E.C.H.C., Mr. Norton was convicted after trial and sentenced by Hon. Penny Wolfgang.   He is currently in the custody of New York State Department of Corrections and Community Supervision

("DOCCS") serving his sentence.

12.     While detained at the E.C.H.C., Mr. Norton was completely dependent upon the named Defendants for his care and well-being.

13.     Defendant Erie County (hereinafter "County") is a governmental subdivision created under the laws of the State of New York.

14.     The Erie County Sheriff's Department is a division of Erie County government.

15.     The county owns, operates and administers E.C.H.C. through the Jail Management Division of the Erie County Sheriff's office.

16.     This action concerns the treatment of Mr. Norton while he was a pretrial detainee confined at E.C.H.C.

17.     At all times referred to herein, Defendant Timothy B. Howard was the elected Sheriff of Erie County.

18.     Defendant Timothy B. Howard was responsible for the promulgation, implementation and maintenance of county policy affecting E.C.H.C.

19.     Defendants Erie County and Timothy B. Howard are charged by the laws of the State of New York with maintaining E.C.H.C. and are responsible for all conditions of confinement, health, safety and medical care

and treatment of persons incarcerated therein.

20.    At all times referred to herein, Defendant Timothy B. Howard as Sheriff of Erie County, was responsible for the day to day operations of E.C.H.C.    In his capacity as Sheriff, he had authority granted to him by the laws of Erie County and/or the State of New York over the custody, control, and charge of E.C.H.C. and the inmates confined therein.

21.    At all times referred to herein, Defendant Brian Doyle was the Undersheriff or Administrative Chief of the Erie County Sheriff's Department. Under the supervision of Defendant Timothy B. Howard, he was responsible for the day to day operations of E.C.H.C.    His duties related to custody, control and charge of E.C.H.C. and the inmates confined therein as those duties are granted to him by the laws of Erie County and the State of New York.

22.    At all times referred to herein, Defendant John Doe was the First Deputy Superintendent of the Erie County Holding Center and his administrative duties included oversight of the booking and records department, transport and overall supervision of ground floor operations at E.C.H.C., security of pretrial detainees at E.C.H.C., and other administrative duties.    As First Deputy Superintendent, he had responsibility for inmates

confined therein as granted to him by the laws of Erie County and the State of New York.

23.    At all times referred to herein, Defendant John/Jane Doe Sergeant(s) and John /Jane Doe Lieutenant (s) were employed by the Erie County Sheriff's Department.   In their capacity as supervisory personnel, they exercised control over subordinate officers.   Upon information and belief, Mr. Norton apprised these Defendants of his heart condition and complained of the intentional and negligent denial and deprivation of his heart medication.   In addition, these officers supervised officers who were involved in the handling and treatment of Mr. Norton.

24.    At all times relevant herein, Defendant Deputy Gavin was a Sheriff's Deputy at E.C.H.C.; Defendant Deputy Boyce was a Sheriff's Deputy at E.C.H.C; Defendant Deputy VanderCort was a Sheriff's Deputy at E.C.H.C;   Defendant Deputy Roman was a Sheriff's Deputy at E.C.H.C; Defendant Deputy Stevens was a Sheriff's Deputy at E.C.H.C; Defendant Deputy Allman was a Sheriff's Deputy at E.C.H.C; Defendant Deputy Klein was a Sheriff's Deputy at E.C.H.C; the foregoing Defendant Sheriffs Deputies and Defendant John/Jane Doe(s), Sheriff's Deputy(s) at E.C.H.C were responsible for the general custody and care of Mr. Norton.   They

harassed and subjected him to unjustified physical contact, prevented him from,   among other things, carrying his required prescription heart medication on his person, destroyed his medication by flushing it down the toilet as alleged contraband, performed cell searches during which his heart medication was confiscated, and took other action that interfered with his medical care and treatment.   As a result of the actions taken by these officers, with the knowledge and consent of their supervisory officers, Mr. Norton was denied access to medical care and treatment, deprived of his required prescription medication, deprived of medical care and treatment, and as a result suffered severe, permanent, painful personal injuries alleged herein.

25.   At all times referred to herein, Defendant John/Jane Doe(s), Medical Department Staff were charged with rendering care and treatment to Mr. Norton as part of their employment in the medical department at E.C.H.C.

26.   At all times referred to herein, Defendant "John/Jane Doe(s), Supervisor of the Medical Department" was a member of the medical staff at E.C.H.C. and was responsible for supervising the provision of care and treatment to Mr. Norton and other inmates.

27.    The named Defendants are legally responsible, in whole and in part, for the operation, maintenance, and provision of services, medical treatment, creation and implementation of policies and conditions at E.C.H.C. and are responsible for the health and safety of pretrial detainees held at those facilities.

28.    The named medical supervisors/staff evinced or displayed deliberate indifference to Mr. Norton's medical condition and care and treatment and denied him of his legal rights as afforded to him under the statutes and legislation cited herein.

## FACTUAL ALLEGATIONS

29.    While Mr. Norton was held as a pretrial detainee at E.C.H.C. from the period of May 2009 through April 2011, Mr. Norton was denied medical care and treatment by all named defendants and as a result sustained severe, painful and permanent personal injury.

30.    From the time of Mr. Norton's intake at E.C.H.C. in May 2009 through his discharge in April 2011, Mr. Norton attempted to make jail officers, staff and civilian personnel aware that he suffered from severe heart disease and other medical aliments.

31.    Upon information and belief, at the time of medical screening

conducted during Mr. Norton's intake, Mr. Norton provided a medical history of chronic heart disease and gave the medical department a list of all of his heart medications that he was prescribed to take at that time.

32.    Mr. Norton specifically advised medical staff at E.C.H.C. during intake that he was taking prescribed nitroglycerin for his heart disease. Upon information and belief, nitroglycerin is prescribed to patients with coronary artery disease, including those with stable angina and those recovering from acute coronary syndromes and myocardial infarction. Because these patients are at risk for coronary events, nitroglycerin is carried on their person to treat acute symptoms of myocardial ischemia.

33.    Because of Mr. Norton's chronic history of heart disease and corresponding symptomology, Mr. Norton repeatedly made requests for his nitroglycerin to be issued to him.

34.    Upon information and belief, the above named Defendants refused to dispense prescribed nitroglycerin as needed.

35.    Further, Mr. Norton was prohibited from carrying medication on his person, despite Defendants' knowledge of his chronic heart disease and complaints of chest pain and discomfort.

10

36.    Even on those occasions when Mr. Norton was given nitroglycerin by Defendants, his medication was subsequently confiscated from him during pat frisks by Defendant Deputy Sheriffs.   On multiple occasions, Defendant Deputy Sheriffs told Mr. Norton he could not keep medication in his cell; that it was contraband; and they flushed it down the toilet.   This was a regular and repeated course of conduct continued through his release in April 2011.

37.    Upon information and belief, from May 2009 through April 2011, Mr. Norton had multiple episodes of coronary symptomology, including severe chest pain.   On numerous dates when Mr. Norton requested medical attention, he was denied and at times was threatened with physical violence if he persisted in making such requests.

38.    In or about December 2009, Mr. Norton complained to Defendant Deputy Sheriffs of severe chest pain and discomfort and was denied medical care and treatment.   As a result Mr. Norton suffered a coronary event and/or myocardial infarction that went untreated.

39.    In or about December 2010, Mr. Norton complained of severe chest pain to Defendant Deputy Sheriffs, including Defendant Deputy Stevens and Defendant Deputy VanderCort.   Mr. Norton's numerous pleas

for medical treatment was not acted upon by these defendants.

40.    Upon information and belief, at the aforementioned time and after requesting access to medical care and treatment from Defendant John/Jane Doe Lieutenant(s), Mr. Norton was forced to walk on his own accord from his cell to the medical unit.    Upon information and belief, when he arrived in the medical unit Mr. Norton's blood pressure was significantly elevated.    Despite this, Mr. Norton was not allowed to remain in the medical unit and was made to walk back to his cell.    He was simply told to rest by the medical staff Defendants named herein.

41.    Upon information and belief, over the next 24 hour period, Mr. Norton continued to complain of increasing and constant chest pain to Defendant Deputy Sheriffs, including Defendant Deputy Allman and Defendant Deputy Klein.

42.    As a result of Defendants' deliberate indifference to Mr. Norton's urgent medical needs, Mr. Norton suffered a second coronary event at the E.C.H.C. while in his cell.

43.    Within close proximity in time and date to this coronary event, in or about December 2010, Mr. Norton was admitted as an inpatient to the Erie County Medical Center where he underwent emergent triple bypass surgery.

12

44.    Upon information and belief, this emergent surgery required an artery to be excised from his left arm.   As a result, Mr. Norton sustained an extensive surgical incision down his left arm and resultant permanent scarring.

45.    Upon information and belief, due to Defendants' deliberate indifference to Mr. Norton's medical complaints, Mr. Norton endured increased physical and mental pain and stress which persisted and contributed to his second coronary event.   Upon information and belief, if Mr. Norton had received proper medical care and treatment, he may have been able to prevent this cardiac event or its severity may have been decreased so as not to require surgery on an emergent basis.

46.    Upon information and belief, in or about February 2011, while undergoing cardiac rehab at the Erie County Medical Center, Mr. Norton was prematurely removed from his treatment facility at the request of the above-named defendants prior to his recommended date of discharge for the purpose of attending court proceedings despite the fact the judge did not order him to be produced. Despite his fragile medical state, during his transfer Defendant Deputy Sheriffs used excessive force in cuffing Mr. Norton causing bruises and contusions to his left arm.

47.    Upon information and belief, in or about February 2011, after his return to E.C.H.C. from court, Mr. Norton sustained further medical complications and infection in his left arm directly attributed to his exposure to pathogens while his immune system was still compromised after surgery ad from the physical restraints applied to his left arm which had not healed from surgery.

48.    Upon his return to E.C.H.C., in February 2011, Mr. Norton was denied his prescribed discharge follow-up care and treatment, which included dispensing to him certain prescribed antibiotic medication.

49.    From May 2009 through April 2011, Mr. Norton engaged in either written or face to face contact with deputies, officers and members of the E.C.H.C. medical departments and complained of chest pain and discomfort and was denied medical care and treatment.

50.    While Mr. Norton was incarcerated at E.C.H.C., he was provided with inadequate medical treatment; upon information and belief, there was no follow up to make sure his chronic and serious medical conditions were addressed; such conduct by Defendants amounted to deliberate indifference to Mr. Norton's documented medical needs.

51.    Mr. Norton was denied reasonable accommodations as a

qualified disabled individual, and upon information and belief, there was a substandard protocol for addressing his special medical needs or such protocol did not exist at all.

52.     As a result of the named Defendants' deliberate indifference to his medical needs, Mr. Norton was caused to sustain multiple coronary events which ultimately required emergent triple bypass surgery, suffer side effects from his chronic medical condition, including physical discomfort and mental and emotional distress, and developed a serious infection further threatening his health.

53.     Upon information and belief, the Defendants have engaged in a pattern and practice of failing to maintain, generate and/or preserve accurate medical records for detainees, including Mr. Norton.

54.     Upon information and belief, the Defendants have engaged in a pattern and practice of denying adequate medical care to special needs detainees, including Mr. Norton.

55.     Upon information and belief, the Defendants have engaged in a pattern and practice of failing to develop clinical practice guidelines for special needs inmates, including those pretrial detainees with heart disease.

56.     Upon information and belief, Defendants have engaged in

15

a pattern and practice of failing to adopt and implement guidelines and procedures to ensure timely access to medical care, continuity of medication and infection control.

57.    Upon information and belief, the Defendants have engaged in a pattern and practice of failing to train corrections officers in the proper treatment and handling of inmates with heart disease.

58.    Upon information and belief, the Defendants have engaged in a pattern and practice of failing to adequately train medical staff or impose appropriate sanctions on medical staff for failing to ensure that inmates with special needs, including heart disease, are regularly seen by a physician to evaluate their status and the effectiveness of their course of medical treatment.

59.    Upon information and belief, all of the named Defendants acted with deliberate indifference toward Mr. Norton's serious medical needs and denied him reasonable accommodation based upon his disability.

60.    Defendant Timothy B. Howard is a "policymaker" for the Erie County Sheriff's Department and has, with deliberate indifference to Mr. Norton's medical circumstances, followed customs and practices of discriminating against inmates, including Mr. Norton, based on disability.

61.    Further, Defendant Erie County, through Defendant Timothy B. Howard, failed to implement the provisions of the ADA and DOCCS directives pertaining to inmates with heart disease.   Mr. Norton suffered damages that were a proximate result of such custom and practice and were a foreseeable consequence of same.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST DEFENDANT ERIE COUNTY ALLEGING A VIOLATION OF 42 USC SECTION 1983

62.    Plaintiff repeats and realleges the allegations of all previous paragraphs in this complaint as if fully set forth herein.

63.    Defendant Erie County was deliberately indifferent to the serious medical needs of Plaintiff Carl E. Norton, Sr.

64.    Defendant Erie County's actions and omissions violated the rights guaranteed to Mr. Norton under the Eighth and/or Fourteenth Amendments to the Constitution of the United States.

65.    Violations of Mr. Norton's constitutional rights occurred as a result of customs, policies and practices pursued by Defendant Erie County.

66.    The customs, policies and practices of Defendant Erie County include, but are not limited to:

a) Ignoring the serious medical needs of inmates;

b) Failure to maintain sufficient medical/supervisory staff to provide adequate care for serious medical needs of inmates;

c) Failure to conduct adequate and timely reviews of the medical staff;

d) Failure to conduct adequate and timely reviews of individual inmate medical cases, treatment, and medical record keeping procedures;

e) Maintaining a policy under which inmates were denied necessary medication or medical devices for reasons unrelated to legitimate security concerns;

f) Failure to train medical staff to detect, evaluate and properly treat inmates with heart disease;

g) Failure to train jail officers regarding the handling and treatment of inmates with special needs, including those with heart disease;

h) Failure to promulgate or implement any policies or procedures for monitoring the adequacy of medications administered to treat medical conditions, including heart disease;

i) Failure to promulgate or implement any procedures for obtaining and documenting a complete and accurate medical history of the

inmate;

j) Failure to promulgate or implement any procedures to evaluate an inmate's need for diagnostic procedures such as x-rays, lab work, cultures, EKG's, Angiograms, or other such testing;

k) Failure to promulgate or implement any procedures to evaluate an inmate's need for medication and to ensure that the prescribed medication is appropriate;

l) Failure to provide medical staff qualified to treat the serious medical needs of inmates;

m) Inadequate management of medical services and treatment, including inadequate record keeping and inadequate procedures for sanctioning medical staff for failing to respond to clear signs of illness or harm;

n) Failure to maintain onsite health care administrators to manage health care services;

o) Failure to designate a coordinator for disabled inmates to ensure compliance with ADA guidelines;

p) Allowing nurses, medical aides, and physician assistants to perform the functions in the treatment and care of inmates that should

19

ordinarily be performed by a medical doctor or other specialist;

       q) Failing to maintain clean and sanitary housing for inmates which chronic infections or other immunosuppressed disabilities, or heart disease.

67.    Defendant Erie County, acting by and through managerial, supervisory and other employees was deliberately indifferent to the serious risk created by these practices, policies, and procedures.

68.    As a direct and proximate result of the aforesaid constitutionally defective practices, policies, and procedures, Plaintiff Carl E. Norton, Sr. suffered damages alleged herein.

69.    Based upon the foregoing, Plaintiff seeks compensatory damages as against Defendant Erie County for its' deliberate indifference toward Mr. Norton.

**AS AND FOR A <u>SECOND CAUSE OF ACTION</u> AS AGAINST DEFENDANTS TIMOTHY B. HOWARD, BRIAN DOYLE, JOHN DOE, FIRST DEPUTY SUPERVISOR OF E.C.H.C., JOHN/JANE SERGEANT(S), JOHN/JANE DOE LIEUTENANT(S), ALLEGING VIOLATION OF 42 USC SECTION 1983**

70.    Plaintiff repeats and realleges the allegations of all previous paragraphs of this complaint as if fully set forth herein.

71.    During all times material hereto, these Defendants fulfilled

supervisory roles at the E.C.H.C.   These Defendants had actual knowledge or constructive knowledge that Mr. Norton was a qualified individual with a disability and that he had requested, on numerous occasions, that he be provided with medical care and treatment for his chronic heart disease.

72.    Defendants, in their supervisory roles, failed to train subordinate officers or discipline same regarding the proper handling and treatment of inmates with chronic heart disease, including Mr. Norton.

73.    Defendants caused Mr. Norton to suffer constitutional deprivations and to incur discrimination based upon his disability, and/or acquiesced in same by subordinate or fellow officers and personnel.

74.    Despite knowing that Mr. Norton was diagnosed with chronic heart disease, they allowed the inmate to be subjected to unduly dangerous conditions, denied medical treatment during acute coronary events including myocardial infarction, and took no steps to provide medical care and treatment to Mr. Norton, or to instruct subordinate officers in the proper treatment and handling of Mr. Norton, or the possible risks posed to Mr. Norton as an inmate with chronic heart disease.

75.    Further, these defendants failed to supervise the administration of medical treatment to Mr. Norton or other impaired inmates, or have a

protocol in place to do so.

76.    Based upon the foregoing, Plaintiff seeks both compensatory and punitive damages as against these Defendants in their supervisory capacity for their deliberate indifference toward Mr. Norton and their failure to properly supervise the acts of officers under their command.

## AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST DEFENDANTS JOHN/JANE DOE(S) MEDICAL STAFF AT ECHC IN VIOLATION OF 42 USC SECTION 1983

77.    Plaintiff repeats and realleges the allegations of all previous paragraphs of this complaint as if fully set forth herein.

78.    At all times material hereto, Defendants had contact with Mr. Norton based upon their employment within the medical department at E.C.H.C.

79.    Defendants were deliberately indifferent to the serious medical needs of Mr. Norton.   They provided inadequate medical care, including, but not limited to failure to properly diagnose, failure to provide or obtain qualified care based upon Mr. Norton's special needs, failing to properly follow up with medical treatment or medications provided to ensure the beneficial effect thereof; ignoring repeated requests by Mr. Norton for medical care including, medication; failing to promptly respond to complaints

by Mr. Norton about symptoms related to coronary events, including

myocardial infarction; delaying in responding to sick call requests, etc.

80.    Based upon Defendants deliberate indifference to Mr. Norton, he

was caused to incur constitutional deprivations and, as a result, Mr. Norton

now seeks compensatory damages as against these Defendants.

### AS AND FOR A <u>FOURTH CAUSE OF ACTION</u> AS AGAINST JOHN/JANE DOE(S) MEDICAL STAFF SUPERVISOR AT E.C.H.C. IN VIOLATION OF 42 USC SECTION 1983

81.    Plaintiff repeats and realleges the allegations of all previous

paragraphs of this complaint as if fully set forth herein.

82.    Upon information and belief, John/Jane Doe(s) Medical Staff

Supervisor exercised control over the E.C.H.C. medical staff at all times

material herein.    Through his/her acts or omissions, John/Jane Doe Medical

Staff Supervisor denied Plaintiff adequate medical care by, including, but not

limited to, failing to properly supervise medical personnel, failing to train

personnel, failing to obtain proper diagnoses for Mr. Norton from a medical

doctor or cardiologist, failing to supervise Mr. Norton's course of treatment,

failing to sanction subordinate employees for administration of inadequate

medical care.

83.    John/Jane Doe Medical Staff Supervisor failed to recommend

appropriate medical treatment, failed to provide and dispense his required

prescription medication; failed to recommend reasonable and necessary

testing or other available diagnostic treatment, and acquiesced in the

unconstitutional treatment of Mr. Norton.   Defendant John/Jane Doe

Medical Staff Supervisor acted with deliberate indifference to Mr. Norton's

serious medical needs.

84.    As a result of the acts and omissions of John/Jane Doe Medical

Staff Supervisor taken in his/her supervisory capacity, Plaintiff seeks both

compensatory and punitive damages against him for violations of 42 USC

Section 1983.

## AS AND FOR A <u>FIFTH CAUSE OF ACTION</u> AS
## AGAINST DEPUTIES GAVIN, BOYCE, VANDERCANT, ROMAN,
## STEVENS, ALLMAN, KLEIN, JOHN/JANE DOE(S) DEPUTY SHERIFFS
## AT E.C.H.C. IN VIOLATION OF 42 USC SECTION 1983

85.    Plaintiff repeats and realleges the allegations of all previous

paragraphs of this complaint as if fully set forth herein.

86.    Upon information and belief, Defendants denied Mr. Norton

access to medical care and treatment at E.C.H.C.    Further, these

Defendants retaliated against Mr. Norton for requesting medical care and

treatment and reasonable accommodation for his disability.

87.    Upon information and belief, Plaintiff Carl E. Norton, Sr. was

subjected to pat frisks and cell searches wherein his prescribed heart

medication was confiscated and destroyed by these Deputy Sheriffs.

88.    As a result of the deliberate indifference of these officers to Mr.

Norton's serious medical needs and the deprivation of his constitutional

rights, Plaintiff is now seeking compensatory damages from these

Defendants.

## AS AND FOR A <u>SIXTH CAUSE OF ACTION</u> AS
## AGAINST DEFENDANT ERIE COUNTY IN VIOLATION
## OF THE AMERICANS WITH DISABILITIES ACT

89.    Plaintiff repeats and realleges the allegations of all previous

paragraphs of this complaint as if fully set forth herein.

90.    Mr. Norton brings this suit against Erie County under Title II of the

Americans With Disabilities Act 42 USC Section 12131 ET Seq. ("ADA").

91.    This Court has jurisdiction under 29 USC 794(a) as incorporated

into 42 USC 12133 (Enforcement Clause).

92.    Plaintiff Carl E. Norton, Sr. is a qualified individual with a

disability as defined in the ADA as he suffers from chronic heart disease.

93.    As a pretrial detainee in the E.C.H.C. Plaintiff was entitled to

reasonable accommodations for his disability.   Upon information and belief,

from May 2009 through April 2011 which Plaintiff was detained, he was

denied such reasonable accommodations, including but not limited denial of access to medical care and treatment, denial of prescribed medications, denial of assistive devices and other assistive measures and equipment.

94.    The absence of reasonable accommodation was inhumane and caused Mr. Norton to suffer physical, mental and emotional distress.

95.    By virtue of the foregoing, Defendant Erie County, acting through managerial, supervisory, and other employees has discriminated against Mr. Norton on the basis of his disability in violation of the ADA.

96.    Defendant Erie County intentionally disobeyed ADA provisions and DOCCS directives requiring the establishment of protocol for implementing policies to deal with inmates who suffer from chronic heart disease.

97.    Since at least 1998 Defendant Erie County was aware that the ADA applied to local jails that housed pretrial detainees.   Despite this awareness and for financial and other reasons, Defendant Erie County purposely delayed complying and failed to comply in Mr. Norton's case with federal statutory requirements and DOCCS directives.

98.    As a result of the foregoing, Defendant Erie County is liable for damages to Mr. Norton under the ADA.

## AS AND FOR A <u>SEVENTHCAUSE OF ACTION</u> AS AGAINST DEFENDANT ERIE COUNTY IN VIOLATING THE REHABILITATION ACT

99.    Plaintiff repeats and realleges the allegations of all previous paragraphs of this complaint as if fully set forth herein.

100.    Plaintiff Carl E. Norton, Sr. is a qualified individual with a disability as defined under the Rehabilitation Act.

101.    Defendant Erie County is a public entity within the meaning of the Act.

102.    During Mr. Norton's incarceration at E.C.H.C. he was deprived of reasonable accommodations for his disability, medical care and treatment, including prescribed medications.

103.    Defendant Erie County discriminated against Mr. Norton solely on the basis of his disability in violation of Section 504 Rehabilitation Act, 29 USC 794 (1982).

104.    Defendant Erie County, acting by and through managerial, supervisory, and other employees, retaliated against Plaintiff for seeking reasonable accommodations as provided for under the Rehabilitation Act. Such retaliation included threats of physical violence, denial of access to medical care and treatment, denial of prescribed medications, denial of

assistive devices and other assistive measures and equipment.

105.   Defendant Erie County receives federal financial assistance.

106.   By virtue of the foregoing, Defendant Erie County is liable to
Plaintiff for damages.

## JURY TRIAL DEMAND

107.   Please take notice that Plaintiff demands a jury determination of
all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor
and against Defendants individually, jointly and severally and to:

a) Award him compensatory damages as against all Defendants.

b) Award him punitive damages as against those Individual
Defendants named in Counts Two, Three, Four, and Five based on their
supervisory roles in violating his rights under 42 USC Section 1983.

c) Award him reasonable attorney's fees, cost of litigation and interest
as is allowed by law.

d) Provide such other relief as the Court deems just and equitable.


DATED:    November 21, 2013
          Orchard Park, New York

                              Yours, etc.

                              /s/Cheryl Meyers Buth
                              Cheryl Meyers Buth, Esq.
                              Murphy Meyers, LLP
                              Attorneys for Plaintiff
                              6506 East Quaker Street
                              Suite 200
                              Orchard Park, New York 14127
                              (716) 662-4186

                              Laurie A. Baker, Esq.
                              Law Office of Laurie A. Baker
                              Attorney for Plaintiff
                              6506 East Quaker Street
                              Suite 200
                              Orchard Park, New York 14127
                              (716) 662-5274